*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL BUSUITO, ANIL KUMAR, SANDRA
HUGHES O'BRIEN, and DANA THOMPSON,

        Plaintiffs-Appellants,

v

BRYAN C. BARNHILL, II, MARK GAFFNEY,
MARILYN KELLY, KIM TRENT, M. ROY
WILSON, WAYNE STATE UNIVERSITY, and
WAYNE STATE UNIVERSITY BOARD OF
GOVERNORS,

        Defendants-Appellees.

FOR PUBLICATION
May 27, 2021
9:10 a.m.

No.  353424
Court of Claims
LC No.  19-000111-MZ

Before:  JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

JANSEN, P.J.

Plaintiffs, Michael Busuito, Anil Kumar, Sandra Hughes O'Brien, and Dana Thompson, appeal as of right the order of the Court of Claims granting summary disposition in favor of defendants, Bryan C. Barnhill, II, Mark Gaffney, Marilyn Kelly, Kim Trent, M. Roy Wilson, Wayne State University, and the Wayne State University Board of Governors, under MCR 2.116(C)(10).  On appeal, plaintiffs also challenge a prior order of the Court of Claims denying plaintiffs' request for injunctive relief and granting summary disposition in favor of defendants under MCR 2.116(I)(1).  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

All individual plaintiffs and defendants, with the exception of Wilson, Wayne State University (WSU), and the Wayne State University Board of Governors (the Board) are all elected members of the Board.  The Board has general supervision of WSU, as afforded by the Michigan Constitution.  See Const 1963, Art 8, § 5.  The Board is comprised of "8 members who shall be nominated and elected in accordance with the election laws of this state."  MCL 390.643.  Wilson, the President of WSU, is "the principal executive officer" of WSU: President Wilson is considered

an "ex-officio member of the [B]oard without the right to vote" and presides over meetings of the Board. See Const 1963, Art 8, § 5; MCL 390.643.

During a Board meeting on April 5, 2019, the Board considered the purchase of the real property located at 400 Mack Avenue in Detroit, Michigan (400 Mack Avenue). Plaintiffs voted "no" to the acquisition of that property. However, on June 19, 2019, the sublease of the 400 Mack Avenue property, with an option to purchase, was added to the executive meeting agenda for the upcoming June 21, 2019 meeting. Plaintiffs maintain that this last-minute addition to the agenda was made because Governor Kumar would not be able to attend the meeting, and therefore defendants believed that they would be able to outvote plaintiffs 4-3 in favor of entering into the sublease for the 400 Mack Avenue property. In response, Governors Busuito, O'Brien, and Thompson boycotted the June 21, 2019 meeting in hopes that the Board would be unable to establish a quorum and transact business.

The June 21, 2019 meeting went forward with defendant Governors in attendance. Additionally, President Wilson was counted as a member of the Board to establish a quorum. During the open session, the Board approved a tuition increase for the upcoming 2019-2020 academic year. President Wilson, despite being counted for a quorum, did not vote. Plaintiffs maintain that the Board violated the Open Meetings Act (the OMA), specifically MCL 15.267(1), by then moving into a closed executive session without holding a roll call vote or a 2/3 majority vote. During the closed executive session, the sublease for the 400 Mack Avenue property was approved.

Plaintiffs originally filed a three-count complaint in Ingham Circuit Court. The case was removed to the Court of Claims and subsequently dismissed without prejudice because plaintiffs failed to strictly comply with the notice-and-verification requirements contained in MCL 600.6431(1). Plaintiffs subsequently re-filed the instant action: a verified three-count complaint and a motion for a temporary restraining order and a preliminary injunction. In their motion, plaintiffs argued that "[a]s a result of the individual [d]efendants' actions in both determining a quorum where none existed, and in holding a closed session without the necessary board approval, the entire June 21, 2019, meeting of the Board of Governors of Wayne State University is null, void, and without effect." Plaintiffs asked the Court of Claims to enter an order under MCR 3.310(B) temporarily restraining defendants from taking ay action with regard to the decisions made at the June 21, 2019 meeting.

In their three-count complaint, plaintiffs went on to allege that neither President "Wilson, nor his predecessors, had ever been counted as a member of the Board to determine a quorum previous to June 21, 2019." Plaintiffs went on to offer the opinion that it was "nonsensical to count a non-voting, unelected ex-officio member for that purpose," and that doing so violated the Michigan Constitution, the WSU Bylaws, and "longstanding principles of democracy." Therefore, in Count I, plaintiffs argued they were entitled to a declaration that the Board did not have a quorum sufficient to hold the June 21, 2019 meeting, and a declaration that without a quorum, any decisions made at the June 21, 2019 meeting are null, void, and without effect. In Count II, plaintiffs sought injunctive relief, specifically an order under MCL 15.271, enjoining defendants from acting upon any decisions made in the closed session of June 21, 2019. Finally, in Count III, plaintiffs alleged a violation of the OMA. Specifically, plaintiffs alleged that by entering into a closed executive session without a 2/3 majority vote or a roll call vote violated MCL 15.267(1),

-2-

and that no exception exists when considering a purchase or lease of real property under MCL 15.267(1) and MCL 15.268(d). The defendant Governors, alleged plaintiff, are thus liable for actual and exemplary damages of not more than $500 total, plus costs and attorney fees, under MCL 15.273.

On August 2, 2019, the Court of Claims issued an opinion and order denying plaintiffs' motion for a temporary restraining order and preliminary injunction, and granting summary disposition in favor of defendants under MCL 2.116(I)(1), finding that plaintiffs' OMA claim fails as a matter of law. With respect to whether plaintiffs were entitled to injunctive relief, the Court of Claims found:

> [a]s it concerns plaintiffs' ability to prevail on the merits, there are two issues to be examined: (1) Whether Wilson should have been counted as a member of the Board of Governors for purposes of establishing a quorum and, if the answer to that question is "no," whether any resulting decision of the Board is void for the reason that no quorum was achieved? (2) Whether any decisions reached in the "closed session of the June 21, 2019 meeting were reached in violation of the OMA?

First, the Court of Claims found that plaintiffs "cannot demonstrate any likelihood of success on the merits of the OMA claim [because] [t]he OMA does not apply to meetings of university boards. *Federated Publications, Inc v Mich State Univ Bd of Trustees*, 460 Mich 75, 84; 594 NW2d 491 (1999); *Detroit Free Press Inc v Univ of Michigan Regents*, 315 Mich App 294, 298; 889 NW2d 717 (2016). Although Const 1963, art 8, § 4 requires "[f]ormal sessions of governing boards of such institutions" to be open to the public, the Court of Claims determined that this requirement "is not the equivalent of, nor does it invoke the application of, the OMA." Citing *Federated Publications*, the Court of Claims explained that " '[g]iven the constitutional authority to supervise the institution generally, application of the OMA to the governing boards of our public universities is [ ] beyond the realm of legislative authority.' " *Federated Publications*, 460 Mich at 89.

The Court of Claims further relied on *Detroit Free Press*, 315 Mich App at 298, in which this Court "explained that the holding in *Federated Publications* defined the 'scope of the Legislature's power to regulate public universities' in general." The Court of Claims went on to conclude that "the scope of that power does not permit the Legislature to apply the OMA to the boards of public universities, regardless of . . . the circumstances[,]" and that

> In *Detroit Free Press*, the Court of Appeals recognized that "[t]he Constitution permits defendant to hold informal meetings in private; defendant is only required to hold its formal meetings in public." *Id*. [at 298-299]. But the constitutional requirement to hold formal meetings in public does not bring about the application of the OMA. *Id*.

> In light of the above, plaintiffs' OMA claim cannot serve as the basis for injunctive relief. The OMA claim will be dismissed pursuant to MCR 2.116(I)(1)

because an OMA claim cannot be asserted against the . . . Board as a matter of law.[1]

The Court of Claims next addressed the likelihood of plaintiffs' ability to succeed on the claim arising out of the defendant Governors' determination that President Wilson could be counted to establish a quorum. The Court of Claims found constitutional and statutory support for and against counting President Wilson when determining a quorum. However, the court ultimately concluded that it

> acknowledges that the plaintiffs' case on quorum as plead is neither frivolous nor lacking any support. If the doctrine of expressio unius est exclusion alterius is deemed inapplicable because of the numerous instances in statute and by-laws where the board membership and presidential duties are addressed separately there is an ambiguity best determined on the merits[,] not preliminarily. The burden on a plaintiff to establish the likelihood of success on the merits is not the burden of proving the claim before the court. However, the court on the record before it does not believe that the plaintiff's likelihood of success for the proposition that the

---

[1] The Court of Claims, in a footnote, noted that

> Although not noted by the parties' briefing, MCL 390.645(2), which discusses the WSU Board of Governors and its meetings, expressly states that the "business which the board may perform *shall be conducted in compliance with Act No. 267 of the Public Acts of 1976, being sections 15.261 to 15.275 of the Michigan Compiled Laws*," i.e., the OMA. This provision of the statute, which does not appear to have ever been the subject of challenge, is inconsistent with the constitutional authority of the Board discussed above. In addition, the statute appears to be in [ ] conflict with the holdings in *Federated Publications* and *Detroit Free Press*. Indeed, the universities at issue in those cases – Michigan State University and the University of Michigan – were subject to similar statutory authority purporting to subject Board meetings to the OMA. See MCL 390.20 (applying the OMA to the University of Michigan Board of Regents meetings); MCL 300.104 (applying the OMA to Michigan State University Board of Trustee meetings). This apparent conflict between MCL 390.645(2) and the Constitution can be resolved by recognizing the preeminence of the Constitution over conflicting legislative enactments. See *Mays v Snyder*, 323 Mich App 1, 33; 916 NW2d 227 (2018). Moreover, this Court is bound by the Supreme Court's interpretation of nearly the same issue and same authorities in *Federated Publications* and *Detroit Free Press*. Thus, the provision in MCL 390.645(2) purporting to subject WSU Board of Governors meetings to the OMA cannot be enforced and does not change the analysis of the instant issues.

We agree with the Court of Claims' analysis recognizing the preeminence of the Constitution over conflicting legislative enactments, and adopt it herein.

inclusion of President Wilson in a quorum is erroneous is substantial nor the harm
of such magnitude that the rare remedy of injunctive relief should apply.

Finally, the Court of Claims determined that plaintiffs failed to establish irreparable harm, and
therefore, "[a]s a result, injunctive relief will not issue in this case." Plaintiffs moved to file an
application for leave to appeal the Court of Claims' order in this Court, but the application was
denied for "failure to persuade th[is] Court of the need for immediate appellate review." See
*Busuito v Barnhill*, unpublished order of the Court of Appeals, entered September 11, 2019
(Docket No. 350111).

On January 30, 2020, defendants moved for summary disposition on the remaining
portions of the complaint under MCR 2.116(C)(8) and (10), MCR 2.116(I)(1), and MCR 2.605(F).
Defendants argued that the only remaining issue in this case was the issue of "whether President
Wilson, as an *ex officio* member of the board, is counted for a quorum." Defendants argued that
the Court of Claims had already concluded that "plaintiffs did not have a likelihood of success on
the merits of this issue, and failed to show irreparable harm necessary for an injunction."
Therefore, the Court of Claims should conclude that "[t]here was a quorum as a matter of Michigan
law; the events which plaintiffs seek to enjoin have already occurred, making the complaint legally
moot; and the elements for an injunction do not exist."

In support of their position that President Wilson could be counted for purposes of
establishing a quorum, defendants noted that § 1.3 of the WSU Bylaws provide that "[a] quorum
for business shall be five members of the Board." Similarly, MCL 390.645(2) provides that "[a]
majority of the members of the board shall form a quorum for the transaction of business."
Defendants explained that under Const 1963, art 8, § 5, the Board is to "elect a president of the
institution under its supervision," and that the president "shall be the principal executive officer of
the institution, be ex-officio a member of the board without the right to vote and preside at meetings
of the board." Likewise, MCL 390.643 provides that the "president of the university shall be ex[-
]officio a member of the board without the right to vote and shall preside at meetings of the board."
The WSU Bylaws, in § 2.2, also classify the president as an ex-officio member of the board.

Thus, defendants argued, "since President Wilson is a member of the board, the plain
language of these authorities compels the conclusion that he is counted to determine a quorum for
business." No constitutional or statutory authority, and no provision in the WSU Bylaws, conclude
that a quorum for business shall be comprised of five voting members. Nor do they provide that
an ex-officio member of the board cannot count for quorum purposes. If the Legislature or the
university wished to limit a quorum to five voting members of the board, it could have done so.

Further, defendants argued, a quorum existed under Robert's Rules of Order, which govern
under the WSU Bylaws. Indeed, § 4.1 of the WSU Bylaws provide that "[i]n the absence of
specific provisions to the contrary, the rules of parliamentary procedure which shall be followed
by the Board and its committees shall be the procedure prescribed in Robert's Rules of Order."
Under Robert's Rules, there are two classes of ex-officio board members, and defendants argued
that because President Wilson is an employee of WSU, was elected by the Board, and has an
obligation to preside over board meetings, he qualifies as an ex-officio board member "under the
authority of" WSU. Therefore, defendants argued, there is no distinction between President
Wilson and the other elected board members when determining a quorum. Accordingly, President

Wilson was properly considered in determining whether a quorum existed to hold the June 21, 2019 board meetings, and where all actions at such meetings required only a majority vote of the board members in attendance, under § 1.3 of the WSU Bylaws, all "requisites were met for valid board and executive committee meetings and valid actions were taken at such meetings."

On January 30, 2020, plaintiffs filed a cross-motion for summary disposition under MCR 2.116(C)(10), asking the Court of Claims to enter a judgment declaring that the decisions made by the Board during the June 21, 2019 meeting were without a quorum, and therefore null, void, and without effect. Plaintiffs argued that the Board is a public body authorized by Const 1963, art 8, § 5 to have eight members, determined by the electorate. The Board is further authorized to "elect a president of the institution" who shall be "the principal executive officer of the institution, be ex-officio a member of the board without the right to vote and preside at meetings of the board." Const 1963, art 8, § 5. However, the Michigan Constitution does not then count the total number of board members at nine, but maintains that the Board is made up of "eight members . . . elected as provided by law." Thus, plaintiffs argued, the Michigan Constitution is clear that the president of the university is "not elected, and does not have any voting rights."

Plaintiffs went on to argue that § 1.3 of the WSU Bylaws requires that five members of the Board be present to establish a quorum for business, and although the quorum provision "does not differentiate between elected or ex-officio members of the Board, other areas of the Bylaws clearly differentiate between the President and the elected members of the Board." In support of their position, plaintiffs cited to § 2.2 of the WSU Bylaws, which provides that the Executive Committee of the Board is comprised of all Board members then in office and the President. Similarly, § 3.4 provides that membership of special committees is to be determined by the Board and the President. Plaintiffs argued that the WSU Bylaws would not make a distinction between the Board, its members, and the President "unless there was a meaningful distinction." Accordingly, President Wilson, an unelected, ex-officio member of the Board, should not be counted for the purposes of establishing a quorum. With only four voting members of the Board present at the June 21, 2019 meeting, the Board did not have a sufficient quorum to transact business and any decisions made at that meeting are rendered null and void, according to plaintiffs.

The Court of Claims considered the cross-motions, and in an opinion and order dated March 25, 2020, granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). Looking to constitutional and statutory authority, as well as the WSU Bylaws, the Court of Claims found that President Wilson was a member of the board, in an ex-officio capacity, who is counted for the purposes of establishing a quorum. The Court of Claims reiterated that under MCL 390.645(2), "[a] majority of the members of the board shall form a quorum for the transaction of business." The Court of Claims went on to find that

> [a] plain reading of MCL 390.645(2) does not exclude [President Wilson] from being counted for purposes of establishing a quorum. Indeed, the phrase "members of the board" is not subject to additional qualification or explanation. To that end, the Court finds significant that the phrase "members of the board" is not expressly limited to voting members, nor is the phrase expressly limited to only the eight elected members of the board.

The Court of Claims further explained that because "the Legislature did not state that the phrase 'members of the board' was to be limited to only voting members or that it was to exclude ex officio members, this [c]ourt should be cautious about reading such a restriction into the statute[,]" particularly where the Legislature has enacted other limitations. Indeed, the Court of Claims explained, "the Legislature is aware of how to exclude ex officio members from being counted for purposes of establishing a quorum, but it did not take those steps to expressly exclude ex officio members in the instant statutory scheme."

Similarly, the WSU Bylaws mirror the language found in the statutory scheme by "declaring that the President of the University is 'an ex officio member of the Board without vote' who 'shall preside at the meetings of the Board.' " The Court of Claims noted that while the WSU Bylaws are silent as to who exactly makes up the five-member quorum, they also do not restrict the members who can be counted for purposes of establishing a quorum to only voting members. The WSU Bylaws, in § 4.1, expressly incorporate that in the "absence of specific provisions of the contrary," the procedure found in Robert's Rules of Order should be followed. The Court of Claims then relied on Robert's Rules of Order when finding that

> The only ex officio board members who should not . . . be counted for purposes of establishing a quorum are those who have no obligation to participate in board matters. By contrast, and by implication, ex officio board members who are under authority and who have obligations are to be counted for purposes of establishing a quorum. In the instant case, President Wilson possesses two attributes of the class of ex-officio members who are deductively entitled to be counted in the quorum: (1) he is under the authority of the Board by virtue of being hired by the Board; and (2) he is obligated to preside at meetings.
>
> * * *
>
> Like the Legislature, the Board could have chosen to enact bylaws containing this exclusion, but it did not do so. Instead, the Board adopted bylaws that expressly incorporate authority which declares that President Wilson *is* to be counted for purposes of establishing a quorum. Giving effect to the plain meaning of the bylaws and to the authorities incorporated therein, it is apparent to the Court that President Wilson, by virtue of his ex officio membership, is to be included for purposes of establishing a quorum of the Board.

Thus, the Court of Claims affirmatively concluded that the President of the University can be counted for purposes of establishing a quorum, and therefore, plaintiffs' arguments for invalidating the Board's actions at the June 21, 2019 meeting are without merit, and defendants were entitled to summary disposition in their favor, as well as dismissal of plaintiffs' complaint. This appeal followed.

## II. STANDARD OF REVIEW

"We review a trial court's decision concerning a preliminary injunction for an abuse of discretion. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016). A trial court abuses its discretion when its decision falls outside the range of reasonable and

principled outcomes. *Id.* at 33-34." *Sandstone Creek Solar, LLC v Township of Benton*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Dkt. No. 352910); slip op at 10.

Summary disposition is appropriate under MCR 2.116(I)(1) "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact." "Under this rule, a trial court has the authority to grant summary disposition sua sponte, as long as one of the two conditions of the rule is satisfied." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds could differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted).

Similarly,

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120); slip op at 4. Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick*, 322 Mich App at 605.

> * * *

> "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App at 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). [*Ahmed v Tokio Marine America Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352418); slip op at 3.]

This Court reviews de novo questions of statutory interpretation. *Id.*

### III. ANALYSIS

#### A. AUGUST 1, 2019 OPINION AND ORDER

On appeal, plaintiffs first challenge the Court of Claims August 1, 2019 order denying their motion for a preliminary injunction and granting summary disposition under MCR 2.116(I)(1) in favor of defendants regarding plaintiffs' OMA claims. With respect to the August 1, 2019 opinion and order, plaintiffs argue that the June 21, 2019 meeting of the Board violated the OMA because that meeting was a "formal session" where decisions were made that required public scrutiny.

-8-

Plaintiffs maintain that a preliminary injunction should have been granted in order to prevent the decisions made at that meeting from taking effect. We disagree.

Under MCR 3.310(A)(4), the party requesting injunctive relief bears the burden of establishing that a preliminary injunction is warranted. This Court recently articulated:

> A preliminary injunction is generally considered a form of equitable relief intended to maintain the status quo pending a final hearing and determining the rights of the parties, and is considered an extraordinary remedy. When determining whether to grant the extraordinary remedy of a preliminary injunction, the trial court must consider:
>
> > (1) whether the applicant has demonstrated that irreparable harm will occur without the issuance of an injunction; (2) whether the applicant is likely to prevail on the merits; (3) whether the harm to the applicant absent an injunction outweighs the harm an injunction would cause to the adverse party; and (4) whether the public interest will be harmed if a preliminary injunction is issued.
>
> A preliminary injunction should not be issued if an adequate legal remedy is available. Economic injuries are generally not sufficient to demonstrate irreparable injury because such injuries typically can be remedied by damages at law. In addition, the mere apprehension of future injury or damage cannot be the basis for injunctive relief. [*Sandstone Creek Solar, LLC*, ___ Mich App at __; slip op at 10-11 (citations omitted).]

Moreover, a preliminary injunction should only issue to preserve the status quo, not to change it. *Pharm Research & Mfg of America v Dep't of Comm Health*, 254 Mich App 397, 402; 657 NW2d 162 (2002). Only after the matter has been resolved on the merits is it appropriate to alter the status quo, being the "last actual, peaceable noncontested status which preceded the pending controversy." *Buck v Thomas M Cooley Law Sch*, 272 Mich App 93, 98 n 4; 725 NW2d 485 (2006) (citation and quotation marks omitted).

The Court of Claims found that with respect to plaintiffs' ability to prevail on the merits of their claims, there were two issues:

> (1) Whether Wilson should have been counted as a member of the Board of Governors for purposes of establishing a quorum, and if the answer to that question is "no," whether any resulting decision of the Board is void for the reason that no quorum was achieved? (2) Whether any decisions reached in the "closed session" of the June 21, 2019 meeting were reached in violation of the OMA?

The Court of Claims first concluded that plaintiffs did not have a likelihood of success on the merits of their OMA claim. In *Federated Publications, Inc v Board of Trustees of Michigan State University*, 460 Mich 75, 83-84; 594 NW2d 491 (1999), our Supreme Court addressed "the question of the scope of the Legislature's power to regulate public universities." Our Supreme Court concluded that Const 1963, art 8, §§ 5 and 6 confer "a unique constitutional status on our public universities and their governing boards[,]" and that because the governing boards have the

-9-

"constitutional authority to supervise the institution generally, application of the OMA to the governing boards of our public universities is . . . beyond the realm of legislative authority." *Federated Publications*, 460 Mich at 84, 89, citing Const 1963, art 8, § 5.

Indeed, a public university's board is given "exclusive authority over the management and control of its institution[.]" *Wade v Univ of Michigan*, 320 Mich App 1, 16; 905 NW2d 439 (2017). Although Const 1963, art 8, § 4 provides "[f]ormal sessions of governing boards of such institutions shall be open to the public," what constitutes a "formal session" is not defined by the Michigan Constitution, and the "application of the OMA [cannot] rest on the absence of a definition of 'formal sessions' in the Constitution. Unlike other provisions of the constitution, the Legislature is not delegated the task of defining the phrase 'formal sessions' for purposes of Const 1963, art 8, § 4." *Federated Publications*, 460 Mich at 90 (footnote omitted). See also *Detroit Free Press, Inc v Univ of Michigan Regents*, 315 Mich App 294, 298-299; 880 NW2d 717 (2016), where this Court reiterated our Supreme Court's holding in *Federated Publications*, concluded that our Supreme Court's holding in *Federated Publications* broadly defined the scope of the Legislature's power to regulate public universities generally, and further concluded that public universities do not have "*completely* unfettered discretion" because a "governing boards' determination of what constitutes formal and informal is not *wholly* insulated from judicial review."

In the Court of Claims, and again here on appeal, plaintiffs argue that the June 21, 2019 meeting should have been considered a "formal session" that was required to be publicly held because the decisions made during that meeting related to the transaction of university business. Therefore, plaintiffs argue, the fact that the June 21, 2019 meeting was not publicly held constituted a violation of the OMA. However, in light of our Supreme Court's holding in *Federated Publications*, and this Court's conclusions in *Detroit Free Press, Inc*, we conclude that the Court of Claims did not abuse its discretion by finding that plaintiffs' OMA claim could not serve as the basis for injunctive relief, and further finding that defendants were entitled to summary disposition of the OMA claim because the OMA claim could not be asserted against the Board as a matter of law.

In the August 1, 2019 opinion and order, the Court of Claims also engaged in an extensive discussion regarding whether plaintiffs had any likelihood of success on the merits on the quorum issue, specifically whether President Wilson could be counted to establish a quorum. The Court of Claims found legal support for and against counting President Wilson to establish a quorum, and ultimately concluded that plaintiffs' "case on quorum as plead is neither frivolous nor lacking any support[,]" and that this issue should be decided on the merits, not preliminarily. Plaintiffs do not challenge this finding as it relates to the August 1, 2019 opinion and order, and therefore we do not address it. Rather, we address the quorum issue *infra* as it relates to the Court of Claims' March 25, 2020 opinion and order.

Finally, the Court of Claims evaluated whether plaintiffs would suffer irreparable harm if a preliminary injunction did not issue. Michigan jurisprudence adheres to the

> longstanding principle that a particularized showing of irreparable harm . . . is . . . an indispensable requirement to obtain a preliminary injunction. The mere apprehension of further injury or damage cannot be the basis for injunctive relief.

-10-

> Equally important is that a preliminary injunction should not issue where an adequate legal remedy is available. [*Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008) (quotation marks and footnotes omitted).]

The Court of Claims found plaintiffs' argument, that the "public will be harmed by the Board's decision to operate in secret, in violation of the OMA, lacked merit because the OMA does not apply." Therefore, plaintiffs could not establish any harm, "let alone irreparable harm." The Court of Claims further found that plaintiffs had failed to demonstrate that a legal remedy was unavailable or inadequate.

Indeed, following our review of the record, we conclude that plaintiffs failed to meet their burden of a particularized showing of irreparable harm. Plaintiffs failed to address why, should they succeed on the merits of their quorum claim, cancelling the sublease or issuing a tuition refund would constitute inadequate legal remedies. Thus, we conclude that the Court of Claims did not abuse its discretion by denying plaintiffs the requested injunctive relief.

B. MARCH 25, 2020 OPINION AND ORDER

Next, plaintiffs challenge the Court of Claims' March 25, 2020 opinion and order granting summary disposition in favor of defendants under MCR 2.116(C)(10). Plaintiffs argue that the Court of Claims erred by finding President Wilson could be counted for purposes of establishing a quorum. Plaintiffs maintain that they are entitled to a declaration that the decisions made by the Board during the June 21, 2019 meeting were made without a quorum, and therefore are null, void, and without effect. While we are troubled by the behavior of all parties involved, particularly as it relates to their responsibilities to the electorate and institution that they have been elected to manage and protect as fiduciaries, we cannot agree that declaratory relief is appropriate in this case.

The resolution of this issue involves the interpretation of various statutory and constitutional provisions. In examining the relevant constitutional provisions, this Court's objective is to "determine the text's original meaning to the ratifiers, the people, at the time of ratification. The primary rule is that of common understanding[,]" which requires this Court to examine the intent of the ratifiers. *Citizens Protecting Michigan's Constitution v Secretary of State*, 503 Mich 42, 61; 921 NW2d 247 (2018) (citations and quotation marks omitted). Moreover,

> [w]hen interpreting statutory language, we begin with the plan language of the statute. *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). "We must give effect to the Legislature's intent, and the best indicator of the Legislature's intent is the words used." *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012). Additionally, when determining this intent we "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute." *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014) (quotation marks and citation omitted). [*Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016).]

The Michigan constitution grants to the Board the power and responsibility of "general supervision of its institution and the control and direction of all expenditures of the institution's funds." Const 1963, art 8, § 5. Article 8, § 5 goes on to provide, in relevant part:

> Each board shall, as often as necessary, elect a president of the institution under its supervision. He shall be the principal executive officer of the institution, be ex-officio a member of the board without the right to vote and preside at meetings of the board. The board of each institution shall consist of eight members who shall hold office for terms of eight years and who shall be elected as provided by law.

Likewise, MCL 390.641 establishes WSU as a "state institution of higher education" that is to be "maintained by the state of Michigan[.]" Further, "[t]he conduct of its affairs and control of its property shall be vested in a board of governors, the members of which shall constitute a body corporate known as the 'board of governors of Wayne state university,' hereinafter referred to as 'the board[.]' " MCL 390.643 provides that the Board is to be comprised of "8 members who shall be nominated and elected in accordance with the election laws of this state. The president of the university shall be ex officio a member of the board without the right to vote and shall preside at meetings of the board."

Neither the constitution, nor the applicable statutes, define the term "ex officio" as it relates to President Wilson's status as an ex officio member of the Board. This fact does not make the term "ex officio" ambiguous, simply because it is undefined. *Diallo v LaRochelle*, 310 Mich App 411, 418; 871 NW2d 724 (2015). With the term "ex officio" being a legal term of art, it is therefore appropriate for us to construe the term "in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). We refrain, however, from reading anything "into a statute that is not within the intent of the Legislature apparent from the language of the statute itself." *Detroit Pub Schs v Conn*, 308 Mich App 234, 248; 863 NW2d 373 (2014). "In other words, we must not judicially legislate by adding into a statute provisions that the Legislature did not include." *Comerica, Inc v Dept of Treasury*, 332 Mich App 155, ___; 955 NW2d 593, 600 (2020). *Black's Law Dictionary* (10th ed) defines "ex officio" as "[b]y virtue or because of an office" or "by virtue of the authority implied by office." See also Henry M. Robert, *Robert's Rules of Order Newly Revised*, § 49, art 66 (10th ed 2000), explaining that "[f]requently boards include ex-officio members–that is, persons who are members of the board by virtue of an office…." On the basis of the foregoing, we conclude that President Wilson, while not one of the eight elected board members, is a member of the Board by virtue of his office.

The next question becomes whether as an ex officio member of the Board, President Wilson can be counted for purposes of establishing a quorum to transact business. Looking to the plain language of MCL 390.645(2), we answer that question in the affirmative. Indeed, MCL 390.645(2) requires that "[a] majority of the members of the board shall form a quorum for the transaction of business." Likewise, § 1.3 of the WSU Bylaws requires a majority or "five members of the Board" to establish a quorum. President Wilson is a member of the Board, and MCL 390.645(2) and the WSU Bylaws do not limit a quorum to a majority of the *voting* or *elected* members of the Board. To be clear, that President Wilson is not a voting member of the Board is of no consequence under a plain reading of the applicable statute and the WSU Bylaws, and should

-12-

WSU wish to limit which type of members qualify for purposes of establishing a quorum, they are free to amend their bylaws.

Like the Court of Claims, we find persuasive that § 4.1 of the WSU Bylaws incorporate "the procedure prescribed in Robert's Rules of Order" "in the absence of specific provisions to the contrary[.]" *Robert's Rules of Order* does discuss ex officio board members, and provides the following guidance:

> In the executive board of a society, if the ex-officio member of the board is under the authority of the society (that is, if he is a member, an employee, or an elected or appointed officer of the society), there is no distinction between him and the other board members. If the ex-officio member is not under the authority of the society, he has all the privileges of board membership, including the right to make motions and to vote, but none of the obligations. . . . The latter class of ex-officio board members, who has no obligation to participate, should not be counted in determining the number required for a quorum or whether a quorum is present at a meeting. [Henry M. Robert, *Robert's Rules of Order Newly Revised*, pp 456-457 (11th ed).]

The Court of Claims found, and we agree, that President Wilson falls into the first category of ex officio board members because he is under the authority of the Board by virtue of being hired by the Board, and he is constitutionally required to preside over Board meetings.

On the basis of the foregoing, we conclude that President Wilson is an ex officio member of the WSU Board of Governors who, despite being constitutionally divested of the right to vote, does count as a member of the board for purposes of establishing a quorum. Pertinent statutory authority, as well as the WSU Bylaws, provide further support for our conclusion. It follows that the June 21, 2019 meeting of the Board was conducted with a quorum present, and therefore the actions taken by the Board during that meeting are to have full effect. Therefore, the Court of Claims did not err by granting summary disposition in favor of defendants on this issue; plaintiffs are not entitled to declaratory relief.[2]

---

[2] We again note, however, that the conduct of the Board and President Wilson leave much to be desired. Plaintiffs admit in their pleadings that they purposefully boycotted the June 21, 2019 meeting to avoid establishing a quorum so that the sublease and the tuition increase could not be voted on after those items were added to the meeting agenda at the last minute. Additionally, the Board approved a sublease of significant real estate behind closed doors. It is the nature of the beast, so-to-speak, that board members will disagree on university business. Disagreements, or differing viewpoints, regarding the management and control of the institution should not be an excuse to conduct business the way the parties have in this case. The Board, and President Wilson, as elected officials and fiduciaries of WSU, owe the institution, the students, the university alumni, and the electorate a greater duty to maintain decorum than has been displayed.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael F. Gadola